**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

November 14, 2012

William James Nicoll, Esq.
Jenkins, Block & Assocs. PC
1040 Park Avenue Ste. 206
Baltimore, MD  21201

Alex S. Gordon, AUSA
36 S. Charles Street
4th Floor
Baltimore, MD  21201

**Re: Diana L. Ashley v. Michael J. Astrue, Commissioner of Social Security, PWG-10-1014**

Dear Counsel:

Pending before this Court, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Ms. Diana Ashley's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF Nos. 9, 17, 30).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary. Local Rule 105.6.  For the reasons that follow, this Court DENIES the Commissioner's Motion and GRANTS the Plaintiff's Alternative Motion for Remand.

Diana L. Ashley (sometimes referred to as "Claimant" or "Ms. Ashley") applied for DIB and SSI on August 15, 2006, and August 25, respectively, alleging that she was disabled since October 8, 2005[1] due to depression, pinched nerves in her back and neck, chronic obstructive pulmonary disease ("COPD"), degenerative disc disease with chronic back pain, and obesity. (Tr. 11, 104-108, 144). Her claims were denied initially and upon reconsideration. (Tr. 69-78). After a hearing held before

---

[1] At the hearing on her current applications Claimant requested an amended onset date of October 8, 2005. (Tr. 25).

an Administrative Law Judge ("ALJ"), Melvin D. Benitz, on June 5, 2008, the ALJ denied Ms. Ashley's claims and concluded in a decision dated October 1, 2008, that Claimant suffered from degenerative disc disease of the cervical spine, status post fusion, degenerative disc disease of the lumbar spine with radiculopathy, chronic obstructive pulmonary disease ("COPD"), obesity and depression, and that they were all "severe" impairments, as that term is defined in the Regulations. The ALJ also found that these impairments did not meet or medically equal any of the Listing of Impairments ("LOI"). The ALJ next found Ms. Ashley retained the residual functional capacity ("RFC") to perform a limited range of light work.[2] Based on her RFC, the ALJ found that she was precluded from performing any of her past relevant work ("PRW"). However, after receiving testimony from a vocational expert ("VE"), the ALJ found that based on her RFC, age, and education, there were jobs available in the national and local economies, existing in substantial numbers, which she could perform. Accordingly, the ALJ found Claimant was not disabled. (Tr. 9-22). On March 30, 2010, the Appeals Council denied Claimant's request for review, making her case ready for judicial review. (Tr. 1-5).

Claimant argues that the ALJ erred in determining her RFC and in finding there was work she could perform. Specifically, she argues that the ALJ improperly rejected the opinions of Dr. M. Walklett, a non-examining, state agency physician. As explained below, I am not able to say that the ALJ's decision is supported by substantial evidence, and therefore DENY the Commissioner's Motion and GRANT the Plaintiff's Alternative Motion for Remand.

The Court finds that the ALJ erred at steps four and five of the sequential evaluation in evaluating Ms. Ashley's mental RFC. The ALJ failed to discuss whether he considered properly all of the evidence of record in determining Claimant's RFC.

---

[2] The ALJ found Ms. Ashley could perform light work that allowed for: "sitting only one and a half hours at a time, standing ten minutes at a time, with no exposure to heights or moving machinery due to medication, no concentrated exposure to humidity, temperature extremes, or dust, fumes, and odors due to her COPD, no prolonged climbing, and no overhead reaching, and no work requiring keen visual acuity". The ALJ also found she was "further limited by pain and depression to simple, routine, unskilled jobs with as little as possible interaction with the general public, co-workers, and supervisors." (Tr. 15).

2

The ALJ documented his specific findings as to the degree of limitation in each of the four areas of functioning described in paragraph(c) of 20 CFR §404.1520a, 416.920a.[3] (Tr. 14). However the ALJ's discussion of Ms. Ashley's mental limitations at steps two and three was not an RFC assessment[4], and did not satisfy the ALJ's duties at step 4 of the sequential evaluation. Social Security Ruling ("SSR") 96-8p, in relevant part, states:

> [T]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process require a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF. SSR 96-8p (1996 WL 374184, *4(S.S.A.)).

Surprisingly, the ALJ referenced the above cited language in his decision. (Tr. 14). However, the ALJ's RFC analysis did not include any of the required detailed findings. Rather, the ALJ stated, in a rather conclusory fashion, that Ms. Ashley could perform "simple, routine, unskilled jobs with as little as possible interaction with the general public, co-workers, and

---

[3] The ALJ found that Ms. Ashley had the following limitations: "mildly" limited in her activities of daily living; "moderately" limited in social functioning; "moderately" limited in ability to concentrate; and she experienced "no" episodes of decompensation. (Tr. 13-14).

[4] The Introduction to Listing 12.00 *Mental Disorders*, in relevant part, states: "An assessment of your RFC <u>complements</u> the functional evaluation necessary for paragraphs B and C of the listings <u>by requiring consideration of an expanded list of work related capacities</u> that may be affected by mental disorders when your impairment is severe but neither meets nor is equivalent in severity to a listed mental impairment." *See* 20 CFR Pt. 404, Subpt.P, App. 1 (emphasis added); *See also* SSR 96-8p (1996 WL 374184).

supervisors." (Tr. 19). This was not an adequate assessment. *Hilton v. Barnhart* 2006 WL 4046076 (D. Kan.) citing *Wiederholt v. Barnhart, 121 Fed. Appx. 833 (10th Cir. 2005)*(the relatively broad unspecified nature of the description "simple" and unskilled" does not adequately incorporate the more specific findings required). All limits on work related activities resulting from the mental impairment must be described in the mental RFC assessment. SSR85-16 *Residual Functional Capacity for Mental Impairments* (1985 WL 56855, *2) (S.S.A).

On June 29, 2007, Dr. Walklett reviewed Ms. Ashley's medical records and completed a Mental Residual Functional Capacity Assessment ("MRFCA"). The doctor stated that Ms. Ashley was "moderately" limited in her abilities to:

> 1) maintain attention and concentration for extended periods;
> 2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
> 3) work in coordination with or proximity to others without being distracted by them
> 4) complete a normal work-day without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
> 5) interact appropriately with the general public;
> 6) accept instructions and respond appropriately to criticism for supervisors;
> 7) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and
> 8) respond appropriately to changes in the work setting.

(Tr. 347-348).

According to Social Security Ruling ("SSR") 96-8p, the mental activities required by competitive, remunerative, unskilled work include:

> Understanding, remembering and carrying out simple instructions.
> Making judgments that are commensurate with the functions of unskilled work-i.e., simple work related decisions.

> Responding appropriately to **supervision, co-workers and work situations and dealing with changes in the work setting**.

(SSR 96-8p 1996 WL 374184 at *6)(Emphasis added).

The limitations Dr. Walklett attributed to Ms. Ashley clearly are relevant to unskilled work according to SSR 96-8p. More importantly, when these limitations were included in the hypotheticals presented to the VE, the VE stated that no work existed for an individual so limited. (Tr. 50). The ALJ acknowledged Dr. Walklett's opinions in his decision but discredited them on an improper basis. (Tr. 20). The ALJ stated:

> [t]he undersigned gives minimal weight to Dr. Walklett's opinions to the extent it is inconsistent with the non-exertional limitations included in the claimant's residual functional capacity. This assessment was based upon a review of the record only, not a personal examination, and as previously noted there are no mental health treatment records in the file. Dr. Walklett did have the three consultative examination reports on which to base an opinion but these reports do not support all of the even moderate limitations found. The claimant exhibited some memory impairment, but was found to have adequate concentration, and normal attention and calculation.
>
> At the hearing, the vocational expert testified that if Dr. Walklett considered "moderate" limitations to mean one-third of an eight hour work day, then the combination of moderate limitations would preclude all work. Even if the undersigned were to afford full weight to Dr. Walklett's opinion, this would not preclude all jobs. There is nothing on the face of the MRFCA to define what is meant by "moderately limited" and Dr. Walklett did not explain in the Remarks what moderate limitations meant in the terms of the work day. Regardless the undersigned has incorporated most of Dr. Walklett's limitations in the residual functional capacity as found.

(Tr. 20).

If, as the ALJ suggests, he was not able to determine the basis for Dr. Walklett's opinions, and/or there was a question how the term "moderate" was defined by the doctor, then the ALJ

had a duty to recontact the doctor before rejecting his opinions, which clearly supported a finding of disability. (Tr. 20, 50, 436). 20 CFR §404.1512(e)(1), in effect at the time of the ALJ's decision, states relevantly, "we will seek clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 CFR §404.1512(e)(1) (as of April 1, 2008). Also, SSR 96-5p states if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make every reasonable effort to recontact the source for clarification of the reasons for the opinion. (SSR 96-5p 1996 WL 374183).

Simply stated, it is not clear that the ALJ properly evaluated Ms. Ashley's impairments at the fourth or fifth step of the sequential evaluation. *See Baker v. Chater*, 957 F. Supp. 75, 79 (D. Md. 1996)(in evaluating the severity of mental impairments a special procedure must be followed by the Commissioner at each level of administrative review).

Thus, for the reasons given, this Court GRANTS Ms. Ashley's Alternative Motion for Remand and DENIES the Commissioner's Motion for Summary Judgment. A separate Order shall issue.

_____/s/_____
Paul W. Grimm
United States Magistrate Judge